**From:** Eagan, Miranda (USANYS) [Contractor]
**To:** King, Lauren (USANYS) [Contractor]
**Subject:** FW: [encrypt]FW: [EXTERNAL] Apple Response; Case Number: 22 MAG 10217 / 2022R00929; (202200124616)
**Date:** Friday, January 20, 2023 10:18:32 AM

**From:** Gurleski, Mark (USANYS) <MGurleski@usa.doj.gov>
**Sent:** Friday, January 20, 2023 7:44 AM
**To:** Eagan, Miranda (USANYS) [Contractor] <MEagan@usa.doj.gov>
**Subject:** [encrypt]FW: [EXTERNAL] Apple Response; Case Number: 22 MAG 10217 / 2022R00929; (202200124616)

Miranda,

This is an apple return for another case. Can we have these returns transferred to a cellebrite report please

The password for the encrypted file(s): VEVJxy2G7dvT#x$quIMf

**From:** LawEnforcement@apple.com <lawenforcement@apple.com>
**Sent:** Thursday, January 19, 2023 1:21 PM
**To:** Gurleski, Mark (USANYS) <MGurleski@usa.doj.gov>
**Subject:** [EXTERNAL] Apple Response; Case Number: 22 MAG 10217 / 2022R00929; (202200124616)

Via Email Delivery

Detective Task Force Officer Gurleski
United States Attorney's Office Southern District of New York
New York, NY - New York

Dear Detective Task Force Officer Gurleski,

Apple Inc. ("Apple") is providing APL000001 and APLiC000001 through APLiC000002 in response to the legal request received by Apple on 2022-12-21. These files are true copies of the Apple data reasonably accessible from Apple's systems and responsive based on the criteria and information provided in the legal request. Said files were prepared by Apple personnel in the ordinary course of business and were obtained during a reasonable search of Apple data.

A technical issue was identified that affected Apple's iCloud Photos content data pull where a bug was inadvertently introduced in Apple's iCloud Photos data pull code. Consequently, the iCloud Photos data provided in Apple's response to this search warrant may include photos with a create or modified date that is greater than the end date for timeframe of search specified in the search warrant, or, where no end date was specified, the signed date of the search warrant. Apple does not have an automated mechanism to filter any such files after the creation of the iCloud Photos legal data pulls. Accordingly, if such files are identified in the provided iCloud Photos data, Apple requests that you please delete the data that exceed the scope of the warrant.

This issue was specific to iCloud Photos data and other provided iCloud content data was not affected by this technical issue.

Please note that certain files within the iCloud backup data may contain aggregated data where Apple was unable to apply a date filter. Due to the complexity of the iCloud backup data you may need to work with a cellular forensics expert to access and review the provided data. Apple is unable to provide technical assistance.

Please note that the backup information produced is not a "business record" of Apple, and therefore Apple cannot authenticate as a business record any information extracted from a subscriber's iCloud backup file. You will likely need a forensic expert for such authentication.

You may note entries from IP addresses beginning with "17." and/or "10." for any available connection logs provided. IP addresses beginning with "17." are assigned to Apple and their occurrence in these logs is reflective of activity on Apple internal servers and not an indication of any user connections. IP addresses beginning with "10." in relation to Find My iPhone ("FMIP") logs are also reflective of activity on Apple internal servers and not an indication of any user connections.

For data security and customer confidentiality purposes, Apple's production of data containing customer personally identifying information is encrypted using GPG encryption software. Law enforcement officers who receive Apple data must be able to manage production files encrypted with the GPG format without technical assistance from Apple.

Technical information relating to GPG encryption software is available at: http://www.gpg4win.org/doc/en/gpg4win-compendium.html. Information in relation to installing GPG on Windows OS is included in this link under the heading 'Installing Gpg4win'. If you require further technical assistance/information, please consult your agency's Information Technology Department.

The password for the GPG file will be provided in a separate email.

All evidence preservation pursuant to the herein request response is the responsibility of the requesting law enforcement agency.

Sincerely,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
DANIEL PATRICK MOYNIHAN UNITED STATES COURTHOUSE
OFFICE OF THE CLERK
500 PEARL STREET
NEW YORK, NEW YORK 10007-1312

Tammi M. Hellwig
CLERK

August 11,2025

Mounir Mrabet
Reg #38281510
FCI Ray Brook
P.O. Box 900
Ray Brook, NY 12977

Mr. Mrabet,

I did some research on your case 23 CR 69 and we do not have Grand Jury Transcripts. If you
would like documents on this case it is 50 cents a page.

Thank you!

*Just with The Documents Enclosed Any one*
*intrested in Justice could Correct please*

Correspondence Clerk
Records Management

*There a reason I would Like to*
*Know if there is Grand Jury minutes*
*Because of All The Evidence*

PLEASE RETURN A COPY OF THIS LETTER WITH YOUR REMITTANCE

*Headw Mroll-*

a storage unit rented MOUNIR, Unit 51368, had been found with one of its two doors open. Gotham Mini Storage employees then entered Unit 51368 through the open door to ascertain whether something was wrong, and at that point identified pills that were visible in plain view inside the unit.

10.    The Employee also sent the Detective photographs of the inside of the unit, including two photographs showing the pills and a second substance inside an open container. Based on my training and experience, I believe the appearance of the pills to be consistent with counterfeit oxycodone pills laced with fentanyl that are often referred to by several street names, including "Blues," and the appearance of the second substance to be consistent with crystal methamphetamine.



**Photograph of possible counterfeit oxycodone pills laced with fentanyl**

6

2019.11.19



**U.S. Department of Justice**
*United States Attorney*
*Choose a District*

# Memorandum

| Type of Activity | Other | |
|---|---|---|
| Date of Activity | February 13, 2023 | |
| Investigation At | Nebula OD | |
| USAO Number (if applicable) | 2022R00929 | |
| Prepared By | Det. Gurleski | |

On 12/20/22 I served Apple Inc. with a search warrant for Icloud account Mounirmez@icloud.com

When Apple provided me the return, there were two Icloud accounts provided, Mounirmez@icloud.com, and mezmrabet@icloud.com

It is unclear what caused the second account to be linked to the return.

Page 1 of 1

USAO 00011'



# StorageMart

StorageMart #1986
645 W 44th St
New York, NY 10036
Phn: (212)245-7337
s1986@storage-mart.com

## Tenant Audit History

Saturday, October 8, 2022
8:38 am

Currently Due:
$351.96

Mounir Mrabet
501 10 Th Ave New York N.y.
New York, NY  1001B
Phn: (917)362-6347
Email:mounirmez@icloud.com

| Receipt # | Created On | Description | Amount | Uncalled | Balance | Due Date | Unit No | Location | Manager |
|---|---|---|---|---|---|---|---|---|---|

**Tenant Notes:**

Friday, September 30, 2022 - DG0127

Notes should not say vendor card, should be access card

Friday, September 30, 2022 - DG0127

Customer came in and stated he left his vendor card, needed to be let to the 5th floor. Verified ID and granted access with my card to 5th floor

Thursday, September 29, 2022 - DG0127

US Department of Justice either Water Mikowald Office : 212-637-2206 Call: 646832-7377 or Mark Gurlaski 646-901-4102 need to be called immediately if a package

Thursday, June 16, 2022 - 310175

arrives for Mr. Mrabel DO NOT SAY ANYTHING TO THE CUSTOMER.

Transferring guest into different room. Room originally reserved is occupied.

*[Handwritten notes:]*

Is this not Deputization?

Is this instructions to Civilians?

Now there was times I couldn't get into My Door Because I did not know that Cops could've changed to Locks on Me?

I was never aware until now 2025.

A-119



**U.S. Department of Justice**
*United States Attorney*
*Choose a District*

# Memorandum

| Type of Activity | Interview | |
|---|---|---|
| Date of Activity | January 2, 2023 | |
| Investigation At | Triple Overdose | |
| USAO Number (if applicable) | 2022R00929 | |
| Prepared By | Det. Gurleski | |

On 01/02/23 Det. [redacted] and I went to the [redacted] Hotel at [redacted] to obtain records showing that hotel room 3344 was vacant after Mounir Mrabet checked out on 07/25/22, until our victims checked in on 07/28/22.

The representative searched the room number and stated that there is record of a guest checking in on 07/25/22 and checking out on 07/27/22.

The representative did not have an explanation as to why this reservation did not appear in their records when we initially asked in the beginning of the investigation. She stated it was likely a computer issue as their system is old and frequently malfunctions.

This is Mark Gurleski - Saying this on a FBI MEMO.

A-70

b.      Subject Premises-2 is a locked storage unit assigned the number 5-13-5, reserved under the name MOUNIR MRABET, and located at SM I MMS, L.L.C., d/b/a Manhattan Mini Storage, 645 West 44th Street, New York, NY 10036. The storage unit has walls but is open and unobstructed on top, and law enforcement was able to look over the walls and see the general contents of the storage unit.

C.  **The Subject Offenses**

4.      For the reasons detailed below, I believe that there is probable cause to believe that the Subject Premises contain evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 (narcotics distribution and narcotics conspiracy) (the "Subject Offenses").

II.  **Probable Cause**

A.  **Probable Cause Regarding Subject's Commission of the Subject Offenses**

5.      On or about September 27, 2022, an employee at a storage facility in Manhattan ("Storage Facility-1") informed law enforcement that a reserved storage unit had been left open and unattended (the "Open Unit"). The Storage Facility-1 employee had entered the Open Unit to conduct a wellness check and observed what appeared to be pills in plain view inside.

6.      From my review of Storage Facility-1 records, I have learned that the Open Unit and one additional storage unit were reserved under the name of MOUNIR MRABET (the "SUBJECT") and associated with a particular phone number (the "Mrabet Phone Number").

7.      On or about September 28, 2022, pursuant to a judicially authorized warrant ("the Storage Unit Warrant"),[1] law enforcement agents executed a search on both storage units reserved

---

[1] In support of the application for the Storage Unit Warrant, I swore to an affidavit that relied in part on facts linking MRABET to a hotel room (the "Hotel Room") in Manhattan where, on or about July 30, 2022, the occupants found and used a powdery substance that they had discovered in the closet of the Hotel Room, and two occupants died of drug overdose. The affidavit is attached

4

2019.11.19

*False Affidavit and Overly Broad Warrant*
*general warrant*

USAO_0(

under MRABET's name. From inside the Open Unit, law enforcement agents recovered, among other things, the following:

      a.    Approximately 165 round loose blue tablets or tablet fragments, stamped "M" on one side and "30" on the other side, in addition to 18 partial tablets and tablet fragments, some of which subsequently tested positive for fentanyl and para-fluorofentanyl;

      b.    Approximately four glass vials containing clear residue, one of which contained a substance that subsequently tested positive for fentanyl, para-fluorofentanyl, and methamphetamine;

      c.    A blue twist of plastic containing purple residue, which subsequently tested positive for fentanyl; and

      d.    A glass jar containing solid material, which subsequently tested positive for cocaine.

**B. Probable Cause Justifying Search of Subject Premises-1**

    8.    From my review of law enforcement reports and video footage recorded by an undercover law enforcement officer (the "UC"), and my personal involvement in this

---

for reference, but is not incorporated by reference, as Exhibit A. Specifically, after reviewing hotel records that a hotel employee pulled up on a computer, I attested that, "[f]rom hotel reservation records, I know that the individual who rented the Hotel [R]oom immediately prior to the individuals in the group" is MRABET. Storage Unit Warrant Affidavit ¶ 7(c).

On or about January 2, 2023, I revisited the hotel and spoke to the same employee to obtain documentation confirming that MRABET occupied the Hotel Room immediately prior to the decedents, but she indicated that the computer system now showed that another guest had occupied the Hotel Room in between MRABET checking out and the decedents' use of the Hotel Room. When asked, she was not able to explain why the information had not been previously available in the hotel computer system. Notwithstanding this new information, I believe that the Storage Unit Warrant set out sufficient probable cause to believe that the MRABET had committed the Subject Offenses and that the storage units reserved in his name contained evidence, fruits and instrumentalities of the Subject Offenses.

2019.11.19               5

USAO_001258



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 7, 2025

**BY ECF**

The Hon. Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007

   Re: *United States v. Mounir Mrabet*, **S1 23 Cr. 69 (JSR)**

Dear Judge Rakoff:

   In accordance with the Court's September 22, 2025 order, ECF No. 74, the Government respectfully submits this memorandum in opposition to Mounir Mrabet's letter-motions seeking various forms of relief, *see* ECF Nos. 62, 67, 69. 70, 71, 72, and 75.

## I.  Background

   On February 6, 2023, a grand jury indicted the defendant on one count of narcotics conspiracy, in violation of 21 U.S.C. § 846, and two counts of narcotics distribution, in violation of 21 U.S.C. § 841(b)(1)(A). ECF No. 3. On June 28, 2023, a superseding indictment charged the defendant with an additional count for possession of a firearm in furtherance of the charged narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. ECF No. 10.

   Prior to trial, the defendant moved for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), seeking to suppress evidence seized through the execution of four search warrants that he claimed contained materially false statements and omissions. On September 12, 2023, the Court denied the motion, and on September 29, 2023, the Court issued a written opinion providing reasoning for that ruling. ECF Nos. 23, 24.

   After a four-day trial, on November 9, 2023, the jury returned a guilty verdict on all four counts in the superseding indictment. The Government's case at trial included a videorecording of the defendant's sale of methamphetamine and fentanyl to an undercover officer inside the defendant's Manhattan apartment, approximately 24 pounds of crystal methamphetamine and approximately half a pound of fentanyl powder seized from inside the same apartment, and the defendant's iCloud account documenting his wholesale drug-trafficking operation in videos, photographs, text messages, and voice messages. The iCloud account included (i) a video in which the defendant spoke on an apparent phone call while panning the camera across a floor piled with

Page 2

drugs, stacks of cash, and a revolver; (ii) numerous additional videos that captured the defendant sorting pound quantities of a crystalline substance consistent in appearance with meth-amphetamine, and hundreds of text messages discussing the defendant's sale of methamphetamine and fentanyl, in which the defendant also threatened to shoot his drug associates, accused his drug associates of stealing his gun, and searched for bullets. *Why Are The Goverment Saying Lies ?*

The investigation of the defendant began following the July 2022 fatal fentanyl poisonings of two individuals inside a Manhattan hotel room from which the defendant had checked out three days earlier. That incident was not part of the Government's case at trial; however prior to sentencing, the Government argued that a preponderance of the evidence had established that the defendant had left behind the fentanyl that caused the poisonings. The Government therefore asked the Court to treat the decedents as victims and allow the victims' family members to be heard at the defendant's sentencing. The Court disagreed, ruling that the Government had not established the defendant's responsibility for the deaths and thus the victim statements were not heard. ECF No. 58 ("Sentencing Tr."), at 12. *Question the Ethics involved Here.*

On April 24, 2024, the Court sentenced the defendant to 210 months' imprisonment on Counts 1, 2, and 3, to run concurrently, to be followed by a mandatory consecutive 60-month term of imprisonment on Count 4. ECF No. 56. On June 16, 2025, the Second Circuit affirmed the judgment. ECF No. 59.1. Specifically, the Second Circuit (i) affirmed the District Court's denial of the defendant's request for a *Franks* hearing and motion to suppress, (ii) rejected the defendant's challenge to the sufficiency of the evidence supporting his conviction on the firearms charge, (iii) rejected the defendant's contention that the District Court had erred by not defining "firearm" in its jury instructions, and (iv) rejected all other arguments as without merit. *United States v. Mrabet*, No. 24-1313-CR, 2025 WL 1682196, at *1 (2d Cir. June 16, 2025). On September 10, 2025, the Second Circuit denied the defendant's petition for rehearing en banc.

## II.  The Defendant's Letter-Motions

Between approximately April 23, 2025 and September 30, 2025, the defendant submitted to the Court seven *pro se* letter-motions[1] for post-conviction relief that he styles as motions for (i) habeas relief, (ii) reconsideration on the grounds of mistake, inadvertence, surprise, or excusable neglect under Rule 60(b) of the Federal Rules of Civil Procedure, (iii) compassionate relief under 18 U.S.C. § 3582, and (iv) acquittal under Rule 29 of the Federal Rules of Criminal Procedure. ECF Nos. 67, 69, 70, 71. The substance of his assertions also suggest he seeks (v) a new trial under Rule 33 of the Federal Rules of Criminal Procedure, and (vi) sanctions against the Government for alleged failures to make disclosures in discovery. In furtherance of these motions, he raises substantive arguments about the legality of the Government's investigation, the legitimacy of the warrants used to obtain evidence, and the sufficiency of the evidence at trial.[2]

---

[1] Some of the filings on the docket appear to be duplicates with slightly different attachments. *Compare* ECF Nos. 71 and 72, *with* ECF Nos. 75 and 76.

[2] The Government has attempted to identify and address the defendant's scattered arguments. If the Court identifies any of arguable merit that the Government has overlooked, the Government respectfully requests notice and 14 days' leave to file a brief supplement addressing such issue.

## III. Discussion

The defendant has not adequately stated a legal basis for challenging his conviction or sentence, and his claims otherwise lack merit.

First, notwithstanding the defendant's request that the Court "please consider this as a motion [for] habeous [sic] corpus relief," ECF No. 72, at 3, the Second Circuit has instructed that such a *pro se* motion should not be characterized as a first motion under 28 U.S.C. § 2255 "unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized." *Adams v. United States*, 155 F.3d 582, 584 (2d Cir. 1998); *see also Gitten v. United States*, 311 F.3d 529, 531 (2d Cir. 2002) (extending *Adams* to instruct the courts to not precipitously treat a Rule 60(b) motion as a second collateral attack). The Second Circuit issued this instruction to safeguard prisoners' rights in light of the stringent limits that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places on a prisoner's ability to bring a second or successive application for a writ of habeas corpus. *Adams*, 155 F. 3d at 584.[3]

Second, as to the defendant's request, in the alternative, that the Court treat his motions as requesting relief under Rule 60(b), that rule has no application here. His motion must be rejected as an attack on the underlying conviction, which the Second Circuit has squarely held is "beyond the scope of Rule 60(b)." *Gitten*, 311 F.3d at 534.[4]

Third, the defendant's request for a reduction of his sentence under Section 3582(c)(1)(A) must be rejected because it "makes no mention of his having sought administrative relief," and in any event, he asserts no extraordinary or compelling reasons for such a reduction. *United States v. Parrot*, No. 21-CR-691 (RMB), 2025 WL 995398, at *2 (S.D.N.Y. Apr. 3, 2025). He contends only that he should be released "to fix my teeth that are painful," ECF No. 67, at 2, but his medical records show that he has been provided medical attention for dental issues since 2024, and that in April 2025 he complained that he needed two teeth pulled but then refused extraction.[5] He offers no other reasons, medical or otherwise, to reduce his sentence; and even if he did, the sentencing factors under 18 U.S.C. § 3553(a) continue to necessitate the original sentence this Court imposed.

---

[3] Even if the Court were to construe these filings as a habeas petition, the defendant cannot prevail because he has failed to allege (1) "that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (citing 28 U.S.C. § 2255(a)).

[4] A Rule 60(b) motion may attack the integrity of a previous habeas proceeding, but here there has been no previous habeas proceeding. *Harris v. United States*, 367 F.3d 74, 82 (2d Cir. 2004).

[5] The defendant's medical records are being submitted under seal as Exhibit A. His dental history appears at pp. 12-35.

Fourth, the defendant's request for acquittal under Rule 29 for evidentiary insufficiency should be denied because he does nothing more than reiterate an argument already rejected by this Court and the Second Circuit on appeal. Specifically, the Second Circuit held that, "[v]iewing the trial evidence in the light most favorable to the Government, the jury reasonably could have found beyond a reasonable doubt that Mrabet used a firearm in furtherance of a drug trafficking crime." *Mrabet*, 2025 WL 1682196, at *2. The Court explained that this "ampl[e]" trial evidence included, "[a]mong other things, a video from Mrabet's iCloud account showed him possessing a revolver alongside drugs and cash; text messages from Mrabet referenced specific firearm calibers, asked for ammunition, and threatened to shoot associates; and Mrabet [telling] an undercover officer about the multiple firearms he possessed, including a 'drug gun.'" *Id.*

Fifth, to the extent that the defendant's motions can be construed as seeking a new trial under Rule 33, they must be rejected because "'competent, satisfactory and sufficient evidence' in the record supports the jury verdict," and nothing in the defendant's submissions raise "a real concern that an innocent person may have been convicted," or that letting the verdict stand would create "manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). To the contrary, the evidence at trial established his guilt on all counts beyond a reasonable doubt, and the Second Circuit concluded the evidence was "overwhelming" as to the firearm conviction on which he focuses much of his argument. *Mrabet*, 2025 WL 1682196, at *2.[6]

Sixth, to the extent that the defendant's motions seek sanctions against the Government and alleges misconduct, the defendant provides no facts to support misconduct of any kind. Specifically:

- As to the defendant's claims that the Government relied on false affidavits to obtain evidence, ECF No. 69, at 3, the Second Circuit already concluded, when rejecting the defendant's argument that he was entitled to a *Franks* hearing, that the District Court did not clearly err in finding that Mrabet failed to make a substantial preliminary showing that [the agent's] misstatement about Mrabet's hotel occupancy was made intentionally or with reckless disregard for the truth, *id.* at *1.

- As to the defendant's claims that the seizure of his iCloud accounts pursuant to judicially authorized warrants violated his constitutional rights and the Stored Communications Act ("SCA"), ECF No. 69, at 3; ECF No. 71, at 4; ECF No. 75, at 2, 5, these claims are factually and legally baseless. He fails to identify any infirmity in the warrants to suggest a violation

---

[6] Most of the complaints that appear throughout the defendant's motions have no bearing on the fairness of his conviction or sentence. For example, the defendant repeatedly alleges that he was unduly investigated or made "liable" for the July 2022 hotel poisonings. *See, e.g.*, ECF No. 75, at 2. But the warrant affidavits fairly recounted the facts of the poisonings and the defendant's connection to the hotel room where they took place, and the poisonings were not introduced at trial or considered by this Court at sentencing. Elsewhere, he contends that his trial counsel "did not perform the way I wanted." ECF No. 67. His dissatisfaction with counsel does not suggest that counsel provided ineffective assistance, and indeed "[c]ounsel's election to forgo [] unsupported argument[s]" of the kind the defendant asserts in his motions would be fairly understood as "sound trial strategy." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000).

Page 5

of his rights, and the SCA does not require service providers to obtain the consent of the account owner to comply with a valid warrant seeking account data. *See* 18 U.S.C. § 2703(b)(1)(A) (stating that a governmental entity may obtain certain electronic communications "without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction.").[7]

- As to the defendant's attempt to assert coercion and entrapment in connection with the videorecorded undercover drug transaction that took place in the defendant's apartment, ECF No. 75, at 3, he cites nothing in the record to support either Government inducement or his own lack of predisposition. To the contrary, his many communications about his drug transactions, among other things, make clear he trafficked controlled substances prior to the transaction and was predisposed to do so again with the undercover officer.

- And as to his allegation that the Government violated his "private affairs" by placing his iCloud data on a hard drive, ECF No. 67, at 2, this appears to be a reference to the fact that the Government provided the defendant with a Government laptop loaded with his entire iCloud account to ensure his ability to review his Rule 16 discovery after he complained that he could not open the discovery hard drive on the jail computers. The Government complied with its discovery obligations and the defendant cites no facts to support the contrary.

\*    \*    \*

The Court should deny the defendant's motions.

---

[7] The defendant also contends that this Court lacked "personal jurisdiction to look at one [sic] personal property . . . under the 4th Amendment." ECF No. 71. Whatever his reasoning, the contention is baseless. "When a District Court has subject matter jurisdiction over the criminal offenses charged"—here, a drug trafficking conspiracy involving the defendant's Manhattan-based drug transactions and gun possession—"it has personal jurisdiction over the individuals charged in the indictment and present before the court to answer those charges." *United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019).

Very truly yours,

JAY CLAYTON
United States Attorney

by: _____

Jane Chong
Assistant United States Attorney
jane.chong@usdoj.gov
(917) 763-3172

Cc: Mounir Mrabet (by FedEx)



81-510⇔
Mounir Mrabet
PO BOX 900
ucc 1-308
RAY Brook, NY 12977
United States

⇔38281-510⇔
Us Sdny District Court
500 Pearl ST
25-Cv-01952 (Alc)
NEW YORK, NY 10007
United States

1 Legal Mail 1
Pro Se office

RECEIVED
FEB - 2 2025
PRO SE OFFICE

FCI RAY BROOK
P.O. BOX 300 RAY BROOK, NEW YORK

DATE: _1-29-26_

"The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has neither been
opened nor inspected. If the writer raises a question or problem
over which this facility has jurisdiction, you may wish to return the
material for further information or clarification. If the writer
enclosed correspondence for forwarding to another addressee, please
return the enclosed to the above address."